**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|                        |   |                                  |
|------------------------|---|----------------------------------|
| MICHAEL KATZ, et al.,  | : | CIVIL ACTION NO. 09-3740 (MLC)   |
|                        | : |                                  |
|     Plaintiffs,        | : | **MEMORANDUM OPINION**           |
|                        | : |                                  |
|     v.                 | : |                                  |
|                        | : |                                  |
| LIVE NATION, INC., et al., | : |                              |
|                        | : |                                  |
|     Defendants.        | : |                                  |

**COOPER, District Judge**

The plaintiff, Michael Katz ("Katz" and collectively with
co-plaintiff Clifford Davidson, "Plaintiffs"), originally brought
this putative class action in New Jersey Superior Court.  (Dkt.
entry no. 1, Rmv. Not. & Compl.)  The defendants, Live Nation,
Inc. ("LNI"), Live Nation Worldwide, Inc. ("LNW"), and GSAC
Partners (collectively, "Defendants"), removed the action to this
Court in July 2009 pursuant to, inter alia, the Class Action
Fairness Act of 2005, 28 U.S.C. § 1332(d).  (Rmv. Not.)  The
action challenges defendants' imposition of certain mandatory
fees on tickets to events held at the PNC Bank Arts Center ("Arts
Center"), an amphitheater located in Holmdel, New Jersey.
(Compl. at ¶ 1.)  The Arts Center is operated by LNW.  (Dkt.
entry no. 13, Answer at ¶ 15.)  Plaintiffs allege violations of
the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et
seq., and the Truth-in-Consumer Contract, Warranty and Notice Act
("TCCWNA"), N.J.S.A. § 56:12-14 et seq.  (Compl. at ¶¶ 65-91.)

Defendants now move to dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. entry no. 12, Mot. to Dismiss.) Defendants move to dismiss the Complaint as asserted against LNI for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Id.)  Defendants move to dismiss the Complaint as asserted against GSAC Partners pursuant to Rule 17(b), on the basis that GSAC Partners cannot be sued because that partnership is dissolved and its liabilities and obligations have been assumed by LNW.  (Id.)  Plaintiffs oppose the motion.  (Dkt. entry no. 19, Pls.' Am. Opp'n Br. ("Pl. Br.").)  The Court determines the motion on the briefs without an oral hearing, pursuant to Rule 78(b).  For the reasons stated herein, the Court will grant the motion in part and deny the motion in part.

## BACKGROUND

Katz alleges that he purchased nine tickets from Defendants' website on June 6, 2009, to a Blink 182 concert scheduled to take place at the Arts Center on August 26, 2009.  (Compl. at ¶ 42.) Katz purchased seven additional tickets to this concert on June 10, 2009.  (Id.)  All sixteen tickets purchased were general admission tickets for the "Lawn" section of the Arts Center. (Id. at ¶ 43.)  Each of the sixteen tickets purchased listed a $6.00 "parking fee," which was added to the admission price of the ticket.  (Id. at ¶ 44.)  The tickets purchased on June 6,

2009, listed a $6.25 "ticket fee," which included a $0.25 "charity fee." (Id. at ¶¶ 47-48.) The tickets purchased on June 10, 2009, did not charge a "ticket fee" as part of Defendants' "No Service Fee Wednesdays" promotion; however, Katz avers that the base admission price of the tickets purchased on June 10, 2009, was $29 per ticket, as opposed to the $7.75 base admission price for the tickets purchased on June 6, 2009. (Id. at ¶¶ 50, 52.) The tickets purchased on "No Service Fee Wednesday" did include the $6.00 "parking fee" for each ticket. (Id. at ¶ 51.)

Plaintiffs take issue with the mandatory "parking fee" added to the price of each ticket because the parking fee disregards the ticket holder's intent to park a car at the Arts Center. (Id. at ¶ 2.) Plaintiffs allege that the "unexplained, mandatory 'ticket fee' (ranging approximately from $6.00 to $12.00)" does not identify or provide any services or other consideration in exchange for the fee, and that the mandatory "charity fee" does not identify any actual charitable organization as the recipient of the fee. (Id. at ¶ 3.) Plaintiffs assert that Defendants' mandatory "'fees' and other pricing practices constitute deceptive and unconscionable commercial practices." (Id. at ¶ 5.)

Plaintiffs purport to represent a class comprising "[a]ny person who, during the proposed Class Period purchased a ticket to an event at the PNC Bank Arts Center from Live Nation, Inc. or

any other Defendant."  (Id. at ¶ 53.)[1]  Count 1 of the Complaint
alleges violations of the NJCFA arising from the "parking fee."
(Compl. at ¶¶ 65-68.)  Count 2 alleges violations of the NJCFA
arising from the "ticket fee" and "charity fee."  (Id. at ¶¶ 69-
78.)  Count 3 alleges violations of the NJCFA arising from the
"No Service Fee Wednesday" marketing scheme.  (Id. at ¶¶ 79-86.)
Count 4 alleges violations of the TCCWNA arising from Defendants'
alleged violations of the NJCFA.  (Id. at ¶¶ 87-91.)  Plaintiffs
seek, inter alia, treble damages pursuant to the NJCFA, and
statutory damages of $100 pursuant to the TCCWNA.  (Id. at 12.)
See N.J.S.A. §§ 56:8-19, 56:12-17.

## DISCUSSION

**I.   Applicable Legal Standards**

    **A.   Rule 12(b)(6) Standard**

In addressing a motion to dismiss a complaint under Rule
12(b)(6), the court must "accept all factual allegations as true,
construe the complaint in the light most favorable to the
plaintiff, and determine, whether under any reasonable reading of
the complaint, the plaintiff may be entitled to relief."
Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.
2008).  At this stage, a "complaint must contain sufficient
factual matter, accepted as true to 'state a claim to relief that

---

[1] The proposed Class Period is "the period beginning six
years prior to the date of filing of this Class Action
Complaint."  (Compl. at ¶ 53.)

4

is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the 'pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

**B.    Personal Jurisdiction**

Rule 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits. See Fed.R.Civ.P. 4(e).  New Jersey's long-arm statute, N.J.Ct.R. 4:4-4, permits a court to exercise personal jurisdiction over a non-resident defendant to the furthest extent allowed by the United States Constitution. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004); see Avdel Corp. v. Mecure, 277 A.2d 207, 209 (N.J. 1971) (noting that New Jersey's long-arm statute allows out-of-state service "to the uttermost limits permitted by the United States Constitution").  The Fourteenth Amendment Due Process Clause, however, prohibits the exercise of personal jurisdiction "over a nonresident defendant who does not

have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (internal quotations omitted; alteration in original).

A defendant's purposeful conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The purposeful availment requirement ensures that a defendant will not be required to litigate in a forum solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of another person. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Hanson, 357 U.S. at 253.

Once a defendant raises lack of personal jurisdiction as a defense, the plaintiff must demonstrate that the defendant has sufficient contacts with the forum to justify the exercise of jurisdiction. N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990); Provident Nat'l Bank, 819 F.2d at

6

437.  A plaintiff may meet this burden by establishing that the court has either "general" or "specific" jurisdiction.  Provident Nat'l Bank, 819 F.2d at 437.  A plaintiff need only make a prima facie demonstration of jurisdiction by showing with sufficient particularity the presence of contacts between the defendant and the forum.  See, e.g., Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

General jurisdiction exists when the defendant has continuous contacts with the forum state that are unrelated to the events forming the basis of the cause of action.  See Provident Nat'l Bank, 819 F.2d at 437; Machulsky v. Hall, 210 F.Supp.2d 531, 538 (D.N.J. 2002).  To establish general jurisdiction, a plaintiff must show significantly more than mere minimum contacts with the forum state.  Provident Nat'l Bank, 819 F.2d at 437; Decker v. Circus Circus Hotel, 49 F.Supp.2d 743, 747 (D.N.J. 1999).  A plaintiff bears the "rigorous" burden of demonstrating that the defendant has "continuous and systematic" contacts with the forum state such that the defendant should expect to be haled into court on any cause of action.  Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414-16, 415 n.9 (1984); Provident Nat'l Bank, 819 F.2d at 437.

Specific jurisdiction over a defendant exists when the defendant has purposefully directed activities at residents of the forum and the claim directly relates to or arises out of

those activities.  Burger King Corp., 471 U.S. at 472; Miller
Yacht Sales, Inc., 384 F.3d at 96.  The activities must "rise to
the level of minimum contacts with the state, such that the
defendant should reasonably anticipate being haled into court
there."  Exton v. Our Farm, Inc., 943 F.Supp. 432, 438 (D.N.J.
1996).  The critical factor is whether the defendant "purposely
avail[ed] itself of the privilege of conducting activities with
the forum State."  Machulsky, 210 F.Supp.2d at 538.  Jurisdiction
is proper where the contacts proximately result from the
defendant's own actions, which create a substantial connection
with the forum.  Burger King Corp., 471 U.S. at 475.  Although a
defendant's entrance into the forum state enhances the
defendant's affiliation with that forum, physical entrance into
the forum is not required.  Id. at 476.

     If a court determines that the defendant has purposefully
established minimum contacts with the forum state, then the court
must decide whether the exercise of personal jurisdiction
comports with "fair play and substantial justice."  Id.  In
addressing this question, a court may consider "the burden on the
defendant, the forum State's interest in adjudicating the
dispute, the plaintiff's interest in obtaining the most efficient
resolution of controversies, and the shared interest of the
several States in furthering fundamental substantive social
policies."  Miller Yacht Sales, Inc., 384 F.3d at 97 (quotation

8

and citation omitted).  Only rarely will the fairness requirement defeat jurisdiction where a defendant has purposefully engaged in forum activities.  <u>Decker</u>, 49 F.Supp.2d at 746.

### C.    Capacity to be Sued

Rule 17(b) governs the capacity of parties to sue or be sued.  It provides:

> Capacity to sue or be sued is determined as follows:
>
> (1)  for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
> (2)  for a corporation, by the law under which it was organized, and
> (3)  for all other parties, by the law of the state where the court is located, except that:
>
> > (A)  a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right arising under the United States Constitution or laws;
> >  . . .

Fed.R.Civ.P. 17(b).  Pursuant to this Rule, a partnership's capacity to sue or be sued is governed by the law of the forum state.  Fed.R.Civ.P. 17(b)(3).  New Jersey has adopted the Uniform Partnership Act, which provides that "a partnership continues after dissolution only for the purpose of winding up its business.  The partnership is terminated when the winding up of its business is completed."  N.J.S.A. § 42:1A-40(a).

## II.  Legal Standards Applied Here

### A.   Plaintiffs' New Jersey Consumer Fraud Act Claims

The NJCFA provides in relevant part:

> The act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud,
> false pretense, false promise, misrepresentation, or
> the knowing, concealment, suppression, or omission of
> any material fact with intent that others rely upon
> such concealment, suppression or omission, in
> connection with the sale or advertisement of any
> merchandise or real estate, or with the subsequent
> performance of such person as aforesaid, whether or not
> any person has in fact been misled, deceived or damaged
> thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2.  The term "person" as used in the NJCFA
includes, inter alia, natural persons, partnerships,
corporations, companies, trusts, business entities and
associations.  N.J.S.A. § 56:8-1(d).

To state a NJCFA claim, a plaintiff must allege the
following elements:  "(1) unlawful conduct by defendant; (2) an
ascertainable loss by plaintiff[s]; and (3) a causal relationship
between the unlawful conduct and the ascertainable loss."
Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009).

Unlawful practices under the NJCFA fall into three general
categories:  affirmative acts, knowing omissions, and regulation
violations.  Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir.
2007)  (quotation omitted).  Intent to defraud is not necessary
to show unlawful conduct by an affirmative act of the defendant,
but is an element of unlawful practice by knowing omission of the

defendant.  See Torres-Hernandez v. CVT Prepaid Solutions, Inc.,
No. 08-1057, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008).

Plaintiffs contend that their NJCFA claims "do not sound in
actual fraud, but instead are brought under a provision of the
NJCFA that imposes liability for 'unconscionable commercial
practices.'"  (Pl. Br. at 5.)  Defendants respond that "New
Jersey courts do not recognize a stand-alone claim for
unconscionable practices under the NJCFA.  Rather, unconscionable
practices must contain some form of deception or
misrepresentation to make them actionable under the NJCFA."
(Dkt. entry no. 12, Def. Br. at 17.)

We find that Defendants err in their assertion that New
Jersey law does not recognize a stand-alone claim for
unconscionable commercial practice.  Under the NJCFA, "[u]nlawful
affirmative acts consist of unconscionable commercial practice,
fraud, deception, false promise, false pretense, and
misrepresentation."  Knoster v. Ford Motor Co., No. 01-3168, 2008
WL 5416399, at *8 (D.N.J. Dec. 22, 2008) (emphasis added) (citing
Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 791 (N.J.
2005)).  NJCFA claims for unconscionable commercial practice need
not allege an affirmative fraudulent statement, representation,
or omission by the defendant.  Dewey v. Volkswagen AG, 558
F.Supp.2d 505, 525 (D.N.J. 2008); see also Cox v. Sears Roebuck &
Co., 647 A.2d 454, 462 (N.J. 1994) (noting that NJCFA "specifies

11

the conduct that will amount to an unlawful practice in the
disjunctive" in determining that the question of "whether an
unconscionable commercial practice occurred . . . does not
adequately address a consumer-fraud claim.").  Unconscionable
commercial practice claims are distinct from NJCFA claims
sounding in fraud, and so the heightened pleading standard of
Rule 9(b) does not apply.  See Dewey, 558 F.Supp.2d at 525-27
(applying Rule 9(b) standard to common law fraud claims and NJCFA
claims sounding in fraud, but not unconscionable commercial
practice claim).

       Because unconscionable commercial practices are categorized
as "affirmative acts," as opposed to knowing omissions, NJCFA
claims alleging unconscionable commercial practice as the
unlawful activity do not require a showing of "intent to deceive"
or "knowledge of the falsity of the representation."  Busse v.
Homebank LLC, No. 07-3495, 2009 WL 424278, at *9 (D.N.J. Feb. 18,
2009) (quoting Gennari v. Weichert Co. Realtors, 691 A.2d 350,
365 (N.J. 1997)); see also Leon v. Rite Aid Corp., 774 A.2d 674,
677 (N.J. App. Div. 2001) ("When the alleged violation is an
affirmative act, plaintiff need not prove defendant's intent nor
even necessarily actual deceit or fraud.  Any unconscionable
commercial practice is prohibited.") (citations omitted).  "The
standard of conduct that the term 'unconscionable' implies is
lack of 'good faith, honesty in fact and observance of fair

12

dealing.'" <u>Cox</u>, 647 A.2d at 462 (quoting <u>Kugler v. Romain</u>, 279
A.2d 640, 652 (N.J. 1971)).  "The capacity to mislead is the
prime ingredient of deception or an unconscionable commercial
practice.  Intent is not an essential element." <u>Fenwick v. Kay
Am. Jeep, Inc.</u>, 371 A.2d 13, 16 (N.J. 1977).

We find that the Complaint adequately alleges facts
establishing the first element of a NJCFA claim, unlawful conduct
by Defendants in the form of unconscionable commercial practice.
Plaintiffs allege that Defendants impose "parking fees" on all
ticket holders without regard to individuals' actual
transportation intentions, charge each ticket holder the parking
fee despite maintaining fewer parking spaces than the venue's
17,500-person capacity for events, and use the "parking fee" not
in exchange for parking services provided to consumers, but
instead as "a contrivance for Defendants to arbitrarily inflate
ticket prices to Art [sic] Center events beyond the advertised
and listed admission prices."  (Compl. at ¶¶ 26-27.)  We find
that these allegations indicate a capacity to mislead consumers
and evince a lack of fair dealing.

Plaintiffs' allegations with regard to Defendants' "ticket
fees," "charity fees," and "No Service Fee Wednesday Promotion"
also contain facts, taken as true, that would support a claim of
unlawful conduct under the NJCFA.  Plaintiffs assert that
Defendants "failed to explain on the face of Arts Center event

tickets or elsewhere what services or other consideration consumers were receiving in exchange for the mandatory ticket fees," and further failed to identify the intended beneficiary of the "charity fee." (Compl. at ¶¶ 30-31, 35-36.)  Because Defendants provide no explanation of the added mandatory "ticket fees" and "charity fees" to the advertised ticket price, these vague but mandatory fees have a tendency to mislead consumers about the value of the ticket.  This potential confusion is highlighted by Plaintiffs' allegations pertaining to "No Service Fee Wednesday," the promotion in which Katz alleges Defendants did not impose the otherwise mandatory "ticket fee" or "charity fee" on tickets purchased, but instead raised the base price of the ticket from $7.75 to $29.00, constituting a hiding of the fees rather than a discount.  (Compl. at ¶¶ 40-41, 52.)  As with the allegations regarding the "parking fees," we find that these allegations satisfy the standard for unconscionable commercial practice:  "lack of good faith, honesty in fact and observance of fair dealing."  Cox, 647 A.2d at 462.[2]

---

[2] We note that cases cited by Defendants in an attempt to impose a more exacting standard for unconscionable business practice claims under the NJCFA are inapposite here.  In Island Mortg. of N.J. v. 3M, 860 A.2d 1013, 1016 (N.J. App. Div. 2004), the court dismissed a claim where there was "no allegation that suggests defendant had any direct contact with any consumer in plaintiffs' class."  Sickles v. Cabot Corp., 877 A.2d 267 (N.J. App. Div. 2005), also cited by Defendants, involved a purchaser of tires who brought NJCFA claims against companies which produce, manufacture, and sell carbon black, a primary ingredient in tires.  At issue in that case was whether "an indirect

Having found that Plaintiffs have sufficiently alleged facts supporting the first element of a NJCFA claim, unlawful conduct by Defendants, we turn to the second and third elements: ascertainable loss and causation.  Defendants do not address these elements in their papers.  (Def. Br. at 18-19; see also Pl. Br. at 19-20 (arguing that Defendants should be foreclosed from raising a challenge to the sufficiency of the pleadings as to the second and third elements of a NJCFA claim).)  We find that the Complaint adequately alleges both ascertainable loss--the payment of allegedly improper fees--and that this loss was allegedly caused by Defendants as a result of their assessment of improper fees on purchasers of tickets.[3]

Plaintiffs have sufficiently alleged facts supporting a claim for unconscionable business practice in violation of the NJCFA.  Accordingly, the part of Defendants' motion seeking to dismiss Count 1, Count 2, and Count 3 will be denied.

---

purchaser of an allegedly price-fixed product may state a claim for antitrust violations under the New Jersey Antitrust Act" and NJCFA.  Sickles, 877 A.2d at 269.  (See Def. Br. at 17-18.) Here, in contrast, tickets to events at the Arts Center are contracts to which the ticket holder and Defendants are the parties; the relationship between the putative class members and Defendants is a direct one, and the Complaint alleges more than mere "alleged monopolistic conduct" as the basis for the NJCFA claims.  Island Mortg., 860 A.2d at 1016.

[3] Defendants' Notice of Removal, in addressing the amount in controversy for jurisdictional purposes, notes that "Plaintiff's Action alleges that these fees totaled at least $12.25 per ticket sold (namely, a $6 'parking fee,' $6 'ticket fee' and $.25 'charity fee[']."  (Rmv. Not. at 4.)

**B.    Plaintiffs' TCCWNA Claim**

Count 4 alleges violations of the TCCWNA arising from Defendants' alleged violations of the NJCFA.  The TCCWNA provides in relevant part:

> No seller . . . shall . . . enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . established by State or Federal law at the time the offer is made or the consumer contract is signed or the . . . notice or sign is given or displayed.

N.J.S.A. § 56:12-15.  Defendants contend that Count 4 must be dismissed because it "is entirely derivative of [Plaintiffs'] NJCFA claim." (Def. Br. at 19.)  Plaintiffs respond with the corollary argument that "if the Court denies Defendants' motion with respect to any of the NJCFA claims, it should also deny the motion with respect to the corresponding TCCWNA claim." (Pl. Br. at 21.)

The TCCWNA requires that consumer contracts be written in a clear and understandable manner. See Alloway v. Gen. Marine Indus., L.P., 695 A.2d 264, 274 (N.J. 1997).  Plaintiffs have alleged that they, as consumers, purchased tickets for performances at the Arts Center from Defendants, and that Defendants' display of fees on its webpage, in confirmation emails and invoices, and on the tickets themselves violated their rights under the NJCFA.  (Pl. Br. at 20; Compl. at ¶¶ 88-91.)

16

Because the Court has determined that Plaintiffs' allegations sufficiently state a claim under the NJCFA, we also find that Plaintiffs have alleged the existence of written contracts that violate Plaintiffs' rights under clearly established State law. See Bosland v. Warnock Dodge, Inc., 933 A.2d 942, 949 (N.J. App. Div. 2007), aff'd, 964 A.2d 741 (N.J. 2009) (reinstating TCCWNA claim based on alleged violations of NJCFA, where appellate court had also reinstated NJCFA claim); cf. Mullin v. Auto. Protection Corp., No. 07-3327, 2008 WL 4509612, at *4-*5 (D.N.J. Sept. 29, 2008) (granting summary judgment in favor of plaintiffs on plaintiffs' TCCWNA claims, which were predicated on the "clearly established" right in the NJCFA entitling a prevailing party to reasonable attorneys' fees and costs of suit).

The part of Defendants' motion seeking to dismiss Count 4 will therefore be denied.

**C.  Personal Jurisdiction over LNI**

Defendants contend that LNI is not subject to personal jurisdiction in New Jersey because it is a foreign corporation that "does not conduct business in New Jersey, nor has it purposely availed itself of the benefits of doing business in New Jersey.  Nor has LNI ever had any responsibility for the ticketing functions that form the basis of plaintiffs' Complaint." (Def. Br. at 2.)  Defendants offer the Certification of Richard Munisteri, Vice President and Associate General

17

Counsel of LNW, to explain Defendants' corporate organization and make the following averments:

- The name of "Live Nation, Inc." was changed to "Live Nation Entertainment, Inc." on or about January 10, 2010;
- LNI and LNW have at all times been maintained as separate and distinct corporate entities;
- LNI does not have offices in New Jersey;
- At no time has LNI owned or leased any real property in New Jersey;
- LNI has never contracted to lease the Arts Center, nor has it been a sub-lessee, assignee, or guarantor of any lease for the Arts Center;
- LNI has never managed the Arts Center;
- LNI has never had any employees in New Jersey;
- LNI has never been registered to conduct business in New Jersey;
- LNI has never conducted business in New Jersey;
- LNI has never operated or done business as "PNC Bank Arts Center," as stated in the caption of the Complaint;
- LNI has never engaged in or had responsibility for the sale of tickets for events at the Arts Center or the "No Service Fee Wednesdays" promotion;
- LNI has never operated or maintained the website www.livenation.com, which is copyrighted to LNW.

(Dkt. entry no. 12, Munisteri Cert. at 1-3.)

Plaintiffs contend that they have alleged that Live Nation, Inc. "is the parent company of both LNW and of the 'various subsidiaries, predecessors, and/or acquires' that partnered to form GSAC Partners in 1996." (Pl. Br. at 23 (quoting Compl. at ¶¶ 8-9).) Plaintiffs assert that LNI caused two of its fully owned subsidiaries doing business in New Jersey, Pavilion Partners and Exit 116 Revisited, "to form a third [subsidiary], GSAC Partners, only for the purposes of leasing the PNC Bank Arts Center and selling tickets to performances therein, thereby

availing itself of the privilege of conducting business in New Jersey." (Id. at 23-24.)

Plaintiffs' allegation that LNI is a corporate parent of certain subsidiaries doing business in New Jersey, without more, is insufficient to carry its burden of establishing that LNI is subject to personal jurisdiction in New Jersey.  Plaintiffs contend that the Court may exercise specific jurisdiction over LNI.[4]  However, the allegation that certain LNI subsidiaries formed a now-defunct partnership for the purpose of leasing the Arts Center does not demonstrate that LNI "'purposefully directed' [its] activities at residents of the forum" or that the claim directly relates to or arises out of LNI's activities. Burger King Corp., 471 U.S. at 472 (citation omitted). Plaintiffs' claims relate to Defendants' ticketing practices, but Plaintiffs have not made any specific allegations with regard to LNI's involvement in those practices.  The Ministeri Certification states that LNI has no such involvement. (Ministeri Cert. at ¶ 10.)  Accordingly, Plaintiffs' claims do not sufficiently relate to LNI's alleged New Jersey activities, and specific jurisdiction over LNI is inappropriate.

---

[4] The parties appear to agree that LNI lacks the "continuous and substantial" contacts with New Jersey necessary for the Court to exercise general jurisdiction.  (Def. Br. at 23; Pl. Br. at 21, 23.)

The Court will grant the part of Defendants' motion seeking to dismiss LNI from the action for lack of personal jurisdiction, pursuant to Rule 12(b)(2).

**D.   Amenability of GSAC Partners to Suit**

Defendants move to dismiss GSAC Partners from this action pursuant to Rule 17(b)(3), which states that a party's capacity to be sued is determined by the law of the forum state.  (Def. Br. at 24.)  Defendants contend that under New Jersey law, GSAC Partners cannot be sued because it was dissolved by operation of law as of December 31, 2007, and its liabilities and obligations were assumed by LNW.  (<u>Id.</u> at 25; Munisteri Cert. at ¶¶ 12-13 & Ex. A, Assumption Agreement.)  Plaintiffs apparently do not oppose dismissal of GSAC Partners from the action, offering to "voluntarily withdraw their claims against GSAC following a decision" on the instant motion.  (Pl. Br. at 21 n.3.)

Pursuant to an Assumption Agreement dated December 31, 2008, GSAC Partners was dissolved by operation of law as of December 31, 2007, as a result of the merger of LNW and certain of its subsidiaries, including general partners of Pavilion Partners, which was one of the two partners in GSAC Partners.  LNW assumed GSAC Partners' liabilities and obligations for all business of GSAC Partners or LNW d/b/a GSAC Partners since December 31, 2007.  At the time of the dissolution of GSAC Partners, Pavilion Partners and LNW were the general partners of GSAC Partners.

20

Because Plaintiffs do not affirmatively oppose dismissal of the claims against GSAC Partners from the action, and because LNW is already a party to the action and has assumed the liabilities and obligations of GSAC Partners, the part of Defendants' motion seeking to dismiss the Complaint as asserted against GSAC Partners will be granted.

### CONCLUSION

The Court, for the reasons stated supra, will deny the part of Defendants' motion seeking to dismiss the Complaint, and grant the part of Defendants' motion seeking to dismiss LNI and GSAC Partners from the action.  The Court will issue an appropriate order.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    June 17, 2010

21