**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
                                     :
MICHAEL KATZ, et al.,                :   CIVIL ACTION NO. 09-3740 (MLC)
                                     :
     Plaintiffs,                     :   MEMORANDUM OPINION
                                     :
     v.                              :
                                     :
LIVE NATION, INC., et al.,           :
                                     :
     Defendants.                     :
_____:
```

**COOPER, District Judge**

The plaintiff, Michael Katz (collectively with co-plaintiff Clifford Davidson, "Plaintiffs"), originally brought this putative class action in New Jersey Superior Court. (Dkt. entry no. 1, Rmv. Not. & Compl.) The defendants, Live Nation, Inc. ("LNI"), Live Nation Worldwide, Inc. ("LNW"), and GSAC Partners (collectively, "Defendants"), removed the action to this Court in July 2009 pursuant to, inter alia, the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). (Rmv. Not.) The action challenges Defendants' imposition of certain mandatory fees on tickets to events held at the PNC Bank Arts Center ("Arts Center"), an amphitheater located in Holmdel, New Jersey. (Compl. at ¶ 1.) The Arts Center is operated by LNW. (Dkt. entry no. 13, Answer at ¶ 15.) Plaintiffs allege violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq., and the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-14 et seq. (Compl. at ¶¶ 65-91.)

Defendants moved to dismiss Count One, Count Two, and Count Four of the Complaint as asserted against LNW for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. entry no. 12, Mot. to Dismiss.) Defendants further moved to dismiss the Complaint as asserted against LNI for lack of personal jurisdiction, pursuant to Rule 12(b)(2). (Id.) Defendants moved to dismiss the Complaint as asserted against GSAC Partners pursuant to Rule 17(b), on the basis that GSAC Partners cannot be sued because that partnership is dissolved and its liabilities and obligations have been assumed by LNW. (Id.) On June 17, 2010, the Court granted Defendants' motion insofar as it sought dismissal of LNI and GSAC Partners from the action, but denied the motion insofar as it sought dismissal of Count One, Count Two, and Count Four as brought against LNW pursuant to Rule 12(b)(6). (See dkt. entry no. 22, 6-17-10 Op.; dkt. entry no. 23, 6-17-10 Order.)

LNW now asks this Court to certify the June 17, 2010 Order ("6-17-10 Order") for appellate review by the Third Circuit Court of Appeals pursuant to 28 U.S.C. § ("Section") 1292(b). (Dkt. entry no. 24, Mot. for Certification.) Defendants also move to stay "all litigation activity as to the First and Second Counts of the Complaint pending the completion of interlocutory

appellate proceedings." (Dkt. entry no. 24, Proposed Order.)[1] Plaintiffs oppose the motion. (Dkt. entry no. 25, Pls. Br.) The Court determines the motion on briefs without an oral hearing, pursuant to Rule 78(b). For the reasons stated herein, the Court will deny the motion for certification and for a partial stay.

### BACKGROUND[2]

Plaintiffs assert that Defendants' imposition of certain mandatory fees in conjunction with the sale of tickets to events at the Arts Center, including ticket fees, parking fees, and charity fees, "constitute[s] deceptive and unconscionable commercial practices." (Compl. at ¶ 5.) Plaintiffs purport to represent a class comprising "[a]ny person who, during the proposed Class Period purchased a ticket to an event at the PNC Bank Arts Center from Live Nation, Inc. or any other Defendant." (Id. at ¶ 53.)

Count 1 of the Complaint alleges violations of the NJCFA arising from the "parking fee." (Compl. at ¶¶ 65-68.) Count 2 alleges violations of the NJCFA arising from the "ticket fee" and "charity fee." (Id. at ¶¶ 69-78.) Count 3 alleges violations of the NJCFA arising from the "No Service Fee Wednesday" marketing

---

[1] It is unclear to the Court why LNW does not also seek a stay as to Count Four, which is dependent upon Count One and Count Two and remains pending in this action. (See 6-17-10 Op. at 16-17.)

[2] See the Court's June 17, 2010 Opinion for a more detailed background to the action.

3

scheme.  (Id. at ¶¶ 79-86.)  Count 4 alleges violations of the TCCWNA arising from Defendants' alleged violations of the NJCFA. (Id. at ¶¶ 87-91.)  Plaintiffs seek, inter alia, treble damages pursuant to the NJCFA, and statutory damages of $100 pursuant to the TCCWNA.  (Id. at 12.)  See N.J.S.A. §§ 56:8-19, 56:12-17.

The Court found that the Complaint alleges facts that "indicate a capacity to mislead consumers and evince a lack of fair dealing" and as such, stated a claim under the NJCFA for unconscionable commercial practices as to the mandatory parking fees, ticket fees, and charity fees.  (6-17-10 Op. at 12-13.) Accordingly, the Court denied Defendants' motion to dismiss Count One, Count Two, and Count Four.[3]

## DISCUSSION

### I. Legal Standards - 28 U.S.C. § 1292(b)

A denial of a motion to dismiss is not a final judgment, and therefore is generally appealable only as an interlocutory appeal under 28 U.S.C. § 1292(b).  See L.R. v. Manheim Twp. Sch. Dist., 540 F.Supp.2d 603, 608 (E.D. Pa. 2008).  Section 1292(b) provides:

> When a district judge, in making in a civil action an
> order not otherwise appealable under this section,
> shall be of the opinion that such order involves a

---

[3] Defendants did not move to dismiss Count Three, which alleges violations of the NJCFA arising from the "No Service Fee Wednesday" marketing scheme.  LNW represents that "class-related discovery is proceeding as to the Third Count."  (Dkt. entry no. 24, Def. Br. at 3.)  See section II.C. infra.

4

> controlling question of law as to which there is
> substantial ground for difference of opinion and that
> an immediate appeal from the order may materially
> advance the ultimate termination of the litigation, he
> shall so state in writing in such order.  The Court of
> Appeals which would have jurisdiction of an appeal of
> such action may thereupon, in its discretion, permit an
> appeal to be taken from such order, if application is
> made to it within ten days after the entry of the order
> . . . .

28 U.S.C. § 1292(b).  Thus, to merit a Section 1292(b) certification, the moving party must show that there is (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974); Kapossy v. McGraw-Hill, Inc., 942 F.Supp. 996, 1001 (D.N.J. 1996).  The decision to grant certification is within the district judge's discretion, even if all three criteria are present.  Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976). Section 1292(b) certification should be used rarely since it is "a deviation from the ordinary policy of avoiding piecemeal appellate review of trial court decisions which do not terminate the litigation."  Kapossy, 942 F.Supp. at 1001 (quotation and citation omitted).

Section 1292(b) is intended "to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be

unnecessary." P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F.Supp.2d 355, 358 (D.N.J. 2001) (quotation and citation omitted). Also, the policies furthered by Section 1292(b) include "the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." Katz, 496 F.2d at 756.

### A. Controlling Question of Law

A controlling question of law, for purposes of Section 1292(b), is "every order which, if erroneous, would be reversible error on final appeal." Id. at 755; P. Schoenfeld Asset Mgmt., 161 F.Supp.2d at 358. It is not required that reversal of the order terminate the litigation or that the order be on the claim's merits. Katz, 496 F.2d at 755. "Controlling" means "serious to the conduct of the litigation, either practically or legally." Id. From the practical standpoint, saving the district court's time and the litigants' expenses is "a highly relevant factor." Id.

### B. Substantial Ground for Difference of Opinion

A difference of opinion, the second Section 1292(b) factor, "must arise out of genuine doubt as to the correct legal standard." P. Schoenfeld Asset Mgmt., 161 F.Supp.2d at 360; Kapossy, 942 F.Supp. at 1001. The moving party's mere disagreement with the district court's ruling is not a

6

substantial ground for difference of opinion for Section 1292(b) purposes.  Kapossy, 942 F.Supp. at 1001; Hulmes v. Honda Motor Co., Ltd., 936 F.Supp. 195, 208 (D.N.J. 1996), aff'd, 141 F.3d 1154 (3d Cir. 1998).

    **C.**    **Materially Advance Termination of Litigation**

A Section 1292(b) certification materially advances the litigation's ultimate termination where the interlocutory appeal will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive.  Manheim Twp. Sch. Dist., 540 F.Supp.2d at 613.  A critical factor is whether the interlocutory appeal will cause excessive delay.  See Hulmes, 936 F.Supp. at 212 (noting that "[d]elay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial" (quotation and citation omitted)).  Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set.  See Kapossy, 942 F.Supp. at 1004 (emphasizing that excessive delay is less likely where the certification question arises "early in the procedural history of the case" and concluding certification would cause excessive delay where discovery had concluded, in limine motions had been decided, and trial was scheduled).

## II.  Legal Standards Applied Here

LNW asks this Court to certify the 6-17-10 Order for interlocutory appeal under Section 1292(b).  (Def. Br. at 1.) LNW contends that the 6-17-10 Order "set forth an interpretation of the controlling standard under the NJCFA and applied it to the NJCFA in a novel context" that could later be found to be erroneous, and thus constitutes a "controlling question of law." (Id. at 5-6.)  Specifically, LNW argues that "there are 'conflicting and contradictory opinions' as to . . . whether New Jersey law recognizes a claim for unconscionable commercial practices [under the NJCFA] absent an allegation of misleading or deceptive conduct."  (Id. at 8.)  LNW also contends that certification would materially advance the litigation because if the 6-17-10 Order is reversed, only Count Three would remain, "mak[ing] the case both narrower and simpler."  (Id. at 12.)

Plaintiffs argue, inter alia, that (1) it is well-settled under New Jersey law that a claim for unconscionable commercial practices may be maintained under the NJCFA, absent misleading or deceptive conduct, (2) LNW fails to explain how an interlocutory appeal would "materially advance the ultimate termination of the litigation," given that Count Three is proceeding and the other two NJCFA claims are "closely related to and no less complex" than Count Three, and (3) LNW fails to explain how the interests of efficiency or justice would be served by certifying an

8

allegedly unsettled question of New Jersey law to the United States Court of Appeals for the Third Circuit, particularly in light of the fact that Defendants removed the action from New Jersey state court, "where the supposed conflict could have been definitively settled." (Pls. Br. at 1-2 & n.1.)

    **A.    Controlling Question of Law**

The NJCFA expressly provides for a stand-alone cause of action for unconscionable commercial practices. N.J.S.A. § 56:8-2 ("The act, use or employment by any person of any unconscionable commercial practice . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."). (See 6-17-10 Op. at 10-11.) However, the Court also recognized authority in its 6-17-10 Opinion, cited by LNW in support of its motion for certification, stating that "[t]he capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice. Intent is not an essential element." Fenwick v. Kay Am. Jeep, Inc., 371 A.2d 13, 16 (N.J. 1977). (6-17-10 Op. at 13; Def. Br. at 9.) Thus, the Court concluded that the alleged "vague but mandatory ['charity' and 'ticket'] fees have a tendency to mislead consumers about the value of the ticket," and found that the allegations pertaining to the "parking fees" "indicate a capacity to mislead consumers and evince a lack of fair dealing." (6-17-10 Op. at 13-14.)

Even if LNW were correct in its argument that the Court set forth an incorrect interpretation of the NJCFA by declining to adopt Defendants' assertion that "unconscionable practices [claims under the NJCFA] must contain some form of deception or misrepresentation to make them actionable under the NJCFA," the Court nonetheless found that the allegations at issue supported an inference of deception and/or misrepresentation.  (See dkt. entry no. 12, Def. Br. Supp. Mot. Dismiss at 17.)  Accordingly, we find that the question invoked by LNW is not a "controlling question of law" in light of the Court's findings, inter alia, that the allegations "indicate a capacity to mislead consumers and evince a lack of fair dealing" because even if the Court had endorsed Defendants' formulation of the applicable legal standard, the Court still would have denied the motion to dismiss.  (6-17-10 Op. at 13; see also id. at 14.)  Thus, any error in identifying the proper legal standard would be harmless, not reversible.  See Katz, 496 F.2d at 755 ("A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on appeal."); In re Schering-Plough Corp., No. 08-397, 2010 WL 2546054, at *4 (D.N.J. June 21, 2010).  Therefore, LNW has not demonstrated that the 6-17-10 Order implicates a controlling question of law.

**B.   Substantial Ground for Difference of Opinion**

The Court acknowledges that some ambiguity exists as to the unconscionable commercial practices cause of action under the NJCFA.  However, this ambiguity is unsurprising given the Supreme Court of New Jersey's recognition that the phrase is not defined in the NJCFA and therefore it could be reasonably inferred that the Legislature "anticipated that courts would 'pour content' into the concept" of "unconscionable commercial practice" on a case-by-case basis.  Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063, 1067 (N.J. 1988) (quoting Kugler v. Romain, 279 A.2d 640, 651 (N.J. 1971)).  Reviewing the cases cited by LNW in support of its motion, we find little support for LNW's contention that a substantial ground for difference of opinion as to whether a claim for unconscionable commercial practices may be maintained absent an allegation of deceptive or misleading conduct.

The Court previously distinguished two of the cases cited again by LNW, and will not revisit them here.  (See 6-17-10 Op. at 14 n.2 (distinguishing Sickles v. Cabot Corp., 877 A.2d 267, 269 (N.J. App. Div. 2005) and Island Mortg. of N.J. v. 3M, 860 A.2d 1013, 1016 (N.J. App. Div. 2004) as involving indirect purchasers' complaints of monopolistic behavior by entities in a supply chain).)  In addition, the Court expressly relied on the standard for unconscionable commercial practices cited above,

Fenwick v. Kay Am. Jeep, Inc., 371 A.2d 13, 16 (N.J. 1977), in the 6-17-10 Opinion, and LNW has failed to show how that case demonstrates a substantial difference in opinion or is irreconcilable with the Court's 6-17-10 Opinion and Order. (See supra at 9; Def. Br. at 9.)

Other cases cited by LNW in support of its motion for certification but not addressed by the Court in its 6-17-10 Opinion do not indicate a substantial ground for difference of opinion as to whether a claim for unconscionable commercial practices may be maintained absent an allegation of deceptive or misleading conduct.  LNW misconstrues the instruction by the Supreme Court of New Jersey in Kugler v. Romain that "in consumer goods transactions . . . unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like" under the NJCFA. 279 A.2d at 652.  (Def. Br. at 8.)  Kugler held that a claim for unconscionable business practices could be maintained under the NJCFA, notwithstanding that the term was not listed in the statute along with deception, fraud, and the like at the time that decision was rendered.  See Kugler, 279 A.2d at 652 ("We do not consider that the absence of the word 'unconscionable' from the statute detracts in any substantial degree from the force of this conclusion. . . . [T]he Legislature intended to broaden the scope of responsibility for unfair business practices by stating

12

. . . that the use of any of the described practices is unlawful whether or not any person (the consumer) has in fact been misled, deceived or damaged thereby.") (internal quotation omitted and emphasis added). Kugler clearly does not require that an unconscionable business practices claim be accompanied by allegations of having been actually misled or deceived, as urged by LNW.

Nor does Turf Lawnmower Repair, Inc. v. Bergen Record Corp. indicate a "substantial ground for difference of opinion," because that case involved a libel claim, rather than a claim for unconscionable commercial practices under the NJCFA. 655 A.2d 417, 430 (N.J. 1995). (Def. Br. at 9.) Meshinsky v. Nichols Yacht Sales is equally unavailing and directly contravenes LNW's claim of conflicting opinions in the New Jersey courts as to the proper standard for unconscionable commercial practices claims. See 541 A.2d at 1067 ("To prove a violation of section 56:8-2, it is not necessary to show actual deceit or a fraudulent act; any unconscionable commercial practice is prohibited. . . . Acknowledging that 'unconscionability' is an 'amorphous concept obviously designed to establish a broad business ethic,' we have defined the term as '[t]he standard of conduct contemplat[ing] . . . good faith, honesty in fact and observance of fair dealing.'") (citing Kugler, 279 A.2d at 652).

13

The court in <u>Quigley v. Esquire Deposition Servs., LLC</u>, another case cited by LNW, affirmed dismissal of the plaintiff's claims because the plaintiff there merely complained that he had been overbilled for deposition transcripts vis-a-vis his own "reasonable expectation" of what those deposition transcripts would look like and how much they would cost. 975 A.2d 1042, 1047-48 (N.J. App. Div. 2009). The <u>Quigley</u> court observed that the plaintiff had

> not cited any authority for his argument that a Consumer Fraud Act claim may be stated solely by an allegation that the price of a product was excessive, without consideration of the manner in which it was marketed. . . . Sellers of goods and services generally may charge whatever the market will bear so long as they do not engage in deceptive <u>or</u> other unfair sales practices.

<u>Id.</u> at 1048 (emphasis added). Although <u>Quigley</u> held that "the third count of plaintiff's amended complaint does not allege any fraud or deception that could support a claim under the Consumer Fraud Act," that opinion does not indicate whether the plaintiff's third count pleaded fraud, unconscionable business practices, or both. <u>Id.</u> at 1049. (<u>See</u> dkt. entry no. 26, Def. Reply Br. at 6-7.) Moreover, the Complaint in this case contains "consideration[s] of the manner in which" the tickets were marketed and sold, a lack of which was fatal to the <u>Quigley</u> plaintiff's NJCFA claims. To the extent <u>Quigley</u> represents a difference of opinion, we find that it is not "substantial."

14

LNW thus has failed to satisfy the second requisite for certification of an order for interlocutory appeal pursuant to Section 1292(b).  Insofar as LNW contends that either "conflicting precedent" or "an absence of authority" exists as to whether charging fees attendant to concert tickets constitutes a violation of the NJCFA, that argument asks the Court to certify the 6-17-10 Order on the basis of mixed questions of fact and law.  (Def. Br. at 9-11.)  This is contrary to Section 1292. "Certification to appeal [an] interlocutory Order is inappropriate when the underlying order involve[s] mixed questions of fact and law because Section 1292(b) was not designed to secure appellate review of factual matters or of the application of the acknowledged law to the facts of a particular case, matters which are within the sound discretion of the trial court."  In re Schering-Plough Corp., 2010 WL 2546054, at *4.

### C. **Materially Advance Termination of Litigation**

Certification of the 6-17-10 Order would not materially advance termination of the litigation.  Count Three, alleging a cause of action under the NJCFA for unconscionable commercial practices pertaining to Defendants' "No Service Fee Wednesdays" promotion, was not a subject of the motion to dismiss, and discovery is proceeding as to that count.  Thus, reversal of the 6-17-10 Order on appeal would not lead to termination of the litigation.

Reversal of the 6-17-10 Order resulting in dismissal of Count One and Count Two of the Complaint would, as LNW contends, simplify the issues to be tried in this action.  LNW represents that Count One and Count Two implicate a total of over two million tickets sold during the six-year Class Period.  (Def. Br. at 12; see Compl. at ¶ 53 (defining the "Class Period").)  In contrast, Count Three pertains to fewer tickets–-approximately 25,000–-over a shorter period of time.  (Def. Br. at 12.)  While elimination of Count One and Count Two would certainly "make discovery easier and less costly" for LNW, we conclude that certification of the 6-17-10 Order is inappropriate under Section 1292(b) for the reasons discussed above.  N.J. Dep't of Treas. v. Fuld, No. 09-1629, 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009) (citing Orson, Inc. v. Miramax Film Corp., 867 F.Supp. 319, 322 (E.D. Pa. 1994)).

## CONCLUSION

The Court, for the reasons stated supra, will deny LNW's motion for certification of the 6-17-10 Order and a partial stay of these proceedings.  The Court will issue an appropriate order.

          s/ Mary L. Cooper  
          **MARY L. COOPER**  
          United States District Judge

Dated:     September 2, 2010