**GREENBERG TRAURIG, LLP**
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932
(973) 360-7900 (Telephone)
(973) 301-8410 (Facsimile)
Attorneys for Defendant
Live Nation Worldwide, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL KATZ and CLIFFORD DAVIDSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIVE NATION, INC. d/b/a PNC BANK ARTS CENTER, LIVE NATION WORLDWIDE, INC., GSAC PARTNERS, and ABC COMPANIES 1-5,<br><br>Defendants. | Civil Action No. 09-cv-03740-MLC-DEA |

**DEFENDANT LIVE NATION WORLDWIDE, INC.'S ANSWER TO THE FIRST AND SECOND COUNTS OF THE CLASS ACTION COMPLAINT**

Defendant Live Nation Worldwide, Inc., by and through its undersigned counsel, Greenberg Traurig, LLP, as and for its Answer to the First and Second Counts of plaintiffs' Class Action Complaint (the "Complaint")[1], hereby responds as follows:

**OVERVIEW**

1.  Live Nation Worldwide, Inc. admits that plaintiffs purport to bring a putative class action regarding certain fees in connection with tickets sold for events at the PNC Bank

---

[1] On February 12, 2010, Live Nation Worldwide, Inc. filed an Answer to the Third and Fourth Counts of the Complaint ("Original Answer") because those counts were not subjects of Live Nation Worldwide, Inc.'s motion to dismiss the Complaint for failure to state a claim. Accordingly, this Answer only addresses the allegations that Live Nation Worldwide, Inc. did not address in its Original Answer, as well as allegations that apply generally to all counts of the Complaint.

1

Arts Center.  The allegations in paragraph 1 require no response because the Complaint speaks for itself and is the best evidence of its contents.  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 1.

2. Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center.  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 2.

3. Live Nation Worldwide, Inc. admits that in 2009 a "ticket fee" and a "charity fee" was charged in conjunction with certain tickets sold for events at the PNC Bank Arts Center.  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 2.

4. Live Nation Worldwide, Inc. already answered the allegations in paragraph 4 in the Original Answer and is not required to do so again.

5. Live Nation Worldwide, Inc. already answered the allegations in paragraph 4 in the Original Answer and is not required to do so again.

**PARTIES**

6. Live Nation Worldwide, Inc. lacks sufficient information to form a belief as to the truth of the allegations in paragraph 6.

7. The allegations in paragraph 7 require no response because they are not directed at Live Nation Worldwide, Inc. and involve an entity that has been dismissed for lack of personal jurisdiction.

8.      Live Nation Worldwide, Inc. admits the allegations in paragraph 8, except denies that it is a subsidiary of Live Nation, Inc.  As of January 25, 2010, Live Nation Worldwide, Inc. is a subsidiary of Live Nation Entertainment, Inc.

9.      The allegations in paragraph 9 require no response because they are not directed at Live Nation Worldwide, Inc. and involve an entity that has been dismissed from this matter.

10.     The allegations in paragraph 10 require no response they are not directed at Live Nation Worldwide, Inc.

11.     The allegations in paragraph 11 require no response because the Complaint speaks for itself and is the best evidence of its contents.

## VENUE

12.     The allegations in paragraph 12 are moot because this case is now venued in the United States District Court for the District of New Jersey.

## ALLEGATIONS OF FACT

### Allegations Regarding Defendants' Pricing Practices

13.     Live Nation Worldwide, Inc. repeats and realleges its responses to each of the preceding paragraphs as if set forth at length herein.

14.     Live Nation Worldwide, Inc. admits the allegations in paragraph 14.

15.     Live Nation Worldwide, Inc. admits the allegations in paragraph 15 with respect to Live Nation Worldwide, Inc. for the period January 1, 2008 to the present and, in addition, avers that it has assumed the liabilities of the predecessor lessee.  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations in paragraph 15.

**Defendants' Mandatory Parking Fee**

16. Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "facility fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 16.

17. Live Nation Worldwide, Inc. admits the allegations in paragraph 17.

18. Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 18.

19. Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "facility fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 19.

20. Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "facility fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly

admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 20.

21.     Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "facility fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 21.

22.     Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "facility fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 22.

23.     Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "facility fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 23.

24.     Live Nation Worldwide, Inc. admits that in 2009 a "parking fee" in the amount of $6.00 was charged in conjunction with each ticket sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "facility fee" in

conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 24.

25. Live Nation Worldwide, Inc. denies the allegations in paragraph 25.

26. Live Nation Worldwide, Inc. admits that there are fewer than 17,500 parking spaces at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 26.

27. Live Nation Worldwide, Inc. denies the allegations in paragraph 27.

### **Defendants' Mandatory "Ticket Fees" and "Charity Fees"**

28. Live Nation Worldwide, Inc. admits that in 2009 a "ticket fee" was charged in conjunction with certain tickets sold for events at the PNC Bank Arts Center. Prior to 2009, Live Nation Worldwide, Inc., or its predecessor, charged a "service fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 28.

29. Live Nation Worldwide, Inc. admits that the amount of the "ticket fee" (in 2009) and the "service fee" (prior to 2009) varied based on the price of the ticket. Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 29.

30. Live Nation Worldwide, Inc. admits that it did not explain on the face of tickets for events at the PNC Bank Arts Center "what services or other consideration consumers were receiving" in exchange for the "ticket fees." Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 30.

31.     Live Nation Worldwide, Inc. denies the allegations in paragraph 31.

32.     Live Nation Worldwide, Inc. admits that pursuant to its contract with the New Jersey Turnpike Authority, Live Nation Worldwide, Inc. charges a "charity fee" in conjunction with each ticket sold for events at the PNC Bank Arts Center.  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 32.

33.     Live Nation Worldwide, Inc. admits that the amount of the "charity fee" has varied.  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 33.

34.     Live Nation Worldwide, Inc. admits that on certain occasions in 2009 the "ticket fee" charged in conjunction with tickets for events at the PNC Bank Arts Center included the "charity fee."  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 34.

35.     Live Nation Worldwide, Inc. admits that it did not explain on the face of tickets for events at the PNC Bank Arts Center "which charitable organizations" received the "charity fees."  Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 35.

36.     Live Nation Worldwide, Inc. denies the allegations in paragraph 36.

### Defendants' No Service Fee Wednesday" Promotion

37.-41. Live Nation Worldwide, Inc. already answered the allegations in paragraphs 37 to 41 in the Original Answer and is not required to do so again.

**Allegations Regarding Defendants' Transaction with the Named Plaintiff**

42.     Live Nation Worldwide, Inc. admits that there was a concert at the PNC Bank Arts Center by a band called "Blink 182" scheduled for August 26, 2009, but lacks sufficient information to form a belief as to the truth of the remaining allegations in paragraph 42. No answer is required with respect to Exhibits F and G to the Complaint, which speak for themselves and are the best evidence of their contents.

43.     Live Nation Worldwide, Inc. admits that the tickets allegedly purchased by plaintiff Michael Katz were general admission tickets for the Lawn section of the PNC Bank Arts Center, but lacks sufficient information to form a belief as to the truth of the remaining allegations in paragraph 43.

44.     Live Nation Worldwide, Inc. lacks sufficient information to form a belief as to the truth of the allegations in paragraph 44.

45.     Live Nation Worldwide, Inc. lacks sufficient information to form a belief as to the truth of the allegations in paragraph 45.

46.     Live Nation Worldwide, Inc. admits that each ticket listed a $6 "parking fee" which was in addition to the cost of the ticket, and lacks sufficient information to form a belief as to the truth of the remaining allegations in paragraph 46.

47.     Live Nation Worldwide, Inc. admits that each ticket listed a $6.25 "ticket fee" which was in addition to the cost of the ticket, and lacks sufficient information to form a belief as to the truth of the remaining allegations in paragraph 47.

48.     Live Nation Worldwide, Inc., at present, lacks sufficient information to form a belief as to the truth of the allegations in paragraph 48.

49. Live Nation Worldwide, Inc. admits that it did not explain on the face of tickets for events at the PNC Bank Arts Center "what services or other consideration consumers were receiving" in exchange for the "ticket fees." Except as expressly admitted hereinabove, Live Nation Worldwide, Inc. denies each and every one of the remaining allegations of paragraph 49.

50.-51. Live Nation Worldwide, Inc. already answered the allegations in paragraphs 50 to 52 in the Original Answer and is not required to do so again.

52. Live Nation Worldwide, Inc. admits that tickets allegedly purchased on June 10, 2009 did not list a "ticket fee" because they were purchased pursuant to the "No Service Fee Wednesday" promotion. Live Nation Worldwide, Inc. also admits that the "No Service Fee Wednesday" promotion was not in effect on June 6, 2009. Live Nation Worldwide, Inc. lacks sufficient information to form a belief as to the truth of the allegations regarding the price of the tickets because the tickets in Exhibits F and G are partially illegible. .

## CLASS ACTION ALLEGATIONS

53. Live Nation Worldwide, Inc. admits that plaintiffs purport to bring this action as a putative class action and that paragraph 53 describes a putative class and two putative subclasses. To the extent that the allegations in paragraph 53 contain legal conclusions and plaintiffs' description of the putative class and subclasses, the allegations require no response. Live Nation Worldwide, Inc. denies that this action may properly proceed as a class action and, except as expressly admitted hereinabove, denies each and every one of the remaining allegations of paragraph 53.

54. Live Nation Worldwide, Inc. lacks sufficient information to form a belief as to the truth of the allegations in paragraph 54.

55. Live Nation Worldwide, Inc. denies the allegations in paragraph 55.

56. Live Nation Worldwide, Inc. denies the allegations in paragraph 56.

57. Live Nation Worldwide, Inc. denies the allegations in paragraph 57.

58. Live Nation Worldwide, Inc. denies that "[p]laintiff will fairly and adequately protects the interests of the Class." Live Nation Worldwide, Inc. lacks sufficient information to form a belief as to the truth of the allegations in the second sentence of paragraph 58.

59. To the extent that the allegations in paragraph 59 contain legal conclusions, the allegations require no response. To the extent that a response is required, Live Nation Worldwide, Inc. denies the allegations in paragraph 59.

60. To the extent that the allegations in paragraph 60 contain legal conclusions, the allegations require no response. To the extent that a response is required, Live Nation Worldwide, Inc. denies the allegations in paragraph 60.

61. To the extent that the allegations in paragraph 61 contain legal conclusions, the allegations require no response. To the extent that a response is required, Live Nation Worldwide, Inc. denies the allegations in paragraph 61.

62. To the extent that the allegations in paragraph 62 contain legal conclusions, the allegations require no response. To the extent that a response is required, Live Nation Worldwide, Inc. denies the allegations in paragraph 62.

63. To the extent that the allegations in paragraph 63 contain legal conclusions, the allegations require no response. Further, to the extent that the allegations in paragraph 63 are not directed at Live Nation Worldwide, Inc. but are directed at a defendant that that has been dismissed from the case, no response is required. To the extent that a response is required, Live Nation Worldwide, Inc. denies each of the allegations in paragraph 63.

64. Live Nation Worldwide, Inc. lacks sufficient information to form a belief as to the truth of the allegations in paragraph 64, except that Live Nation Worldwide, Inc. avers that this litigation will be unmanageable as a class action. .

## FIRST COUNT
### Consumer Fraud Act (CFA) violations arising from Defendants' mandatory, per-ticket parking fee

65. Live Nation Worldwide, Inc. repeats and realleges its responses to each of the preceding paragraphs as if set forth at length herein.

66. Live Nation Worldwide, Inc. denies the allegations in paragraph 66.

67. Live Nation Worldwide, Inc. denies the allegations in paragraph 67.

68. Live Nation Worldwide, Inc. denies the allegations in paragraph 68.

## SECOND COUNT
### CFA violations arising from Defendants' mandatory "ticket fee" and "charity fee"

69. Live Nation Worldwide, Inc. repeats and realleges its responses to each of the preceding paragraphs as if set forth at length herein.

70. Live Nation Worldwide, Inc. denies the allegations in paragraph 70.

71. Live Nation Worldwide, Inc. denies the allegations in paragraph 71.

72. Live Nation Worldwide, Inc. denies the allegations in paragraph 72.

73. Live Nation Worldwide, Inc. denies the allegations in paragraph 73.

74. Live Nation Worldwide, Inc. denies the allegations in paragraph 74.

75. Live Nation Worldwide, Inc. denies the allegations in paragraph 75.

76. Live Nation Worldwide, Inc. denies the allegations in paragraph 76.

77. Live Nation Worldwide, Inc. denies the allegations in paragraph 77.

78. Live Nation Worldwide, Inc. denies the allegations in paragraph 78.

**THIRD COUNT**
**CFA violations arising from Defendants' "No Service Fee Wednesday" marketing scheme**

79.-86. Live Nation Worldwide, Inc. already answered the allegations in paragraphs 79 to 86 in the Original Answer and is not required to do so again.

**FOURTH COUNT**
**Violations of the Truth-in-Consumer Contract, Warranty & Notice Act (TCCWNA)**
**N.J.S.A. § 56:12-14 *et seq.***

87.     Live Nation Worldwide, Inc. repeats and realleges its responses to each of the preceding paragraphs as if set forth at length herein.

88.     To the extent that the allegations in paragraph 88 contain legal conclusions, the allegations require no response.  To the extent that a response is required, Live Nation Worldwide, Inc. denies the allegations in paragraph 88.

89.     Live Nation Worldwide, Inc. denies the allegations in paragraph 89.

90.     Live Nation Worldwide, Inc. denies the allegations in paragraph 90.

91.     Live Nation Worldwide, Inc. denies the allegations in paragraph 91.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fail to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

The Complaint is barred by the doctrines of estoppel and waiver.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to any form of equitable relief to the extent that Plaintiffs are barred by the doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs have not suffered any damages, or in the alternative, any damages that plaintiffs may have suffered were caused by their own conduct.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to any relief to the extent that such claims are barred by the applicable statutes of limitation.

**SIXTH AFFIRMATIVE DEFENSE**

The Court is without personal jurisdiction over all or some of the putative class members.

**SEVENTH AFFIRMATIVE DEFENSE**

The claims in the Complaint are barred on the grounds that plaintiffs and the members of the putative class failed to mitigate their alleged damages.

**EIGHTH AFFIRMATIVE DEFENSE**

The claims of plaintiffs and the members of the putative class are barred by the doctrine of accord and satisfaction.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs and the members of the putative class are not entitled to any equitable relief because they have an adequate remedy at law.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs and the members of the putative class did not rely on any alleged misrepresentations or omissions by Live Nation Worldwide, Inc. in purchasing their tickets.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs and the members of the putative class are not entitled to any relief because Live Nation Worldwide, Inc. did not commit any regulatory violation in connection with the sale of tickets to consumers.

**TWELFTH AFFIRMATIVE DEFERENCE**

Plaintiffs did not sustain any ascertainable loss.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs and the members of the putative class are not entitled to any relief because Live Nation Worldwide, Inc. did not make any misrepresentation or knowing omission.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs did not sustain any compensable actual damages and are not otherwise entitled to recover such damages.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs and the members of the putative class were fully informed of all material facts regarding their purchase of tickets.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs and the members of the putative class are not entitled to any relief because Live Nation Worldwide, Inc. has not engaged in any conduct that is likely to deceive reasonable members of the public.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs and the members of the putative class are not entitled to any relief because Live Nation Worldwide, Inc. has not engaged in any unlawful or unconscionable conduct.

## EIGHTEENTH AFFIRMATIVE DEFENSE

At all relevant times, Live Nation Worldwide, Inc. acted in good faith and without malice or intent to injure Plaintiffs.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent that plaintiffs and the members of the putative class claim exemplary or punitive damages, such awards are impermissible to the extent prohibited by the Due Process Clause of the Fourteenth Amendment.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent that plaintiffs and the members of the putative class claim exemplary or punitive damages, they fail to allege claims sufficient to entitle them to such an award.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Application of the laws of the State of New Jersey to certain members of the putative class would violate the Due Process Clause of the Fourteenth Amendment.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The Complaint fails to identify a definable and ascertainable class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The action cannot be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Liability cannot be assessed against Live Nation Worldwide, Inc. without individual testimony and evidence from Plaintiffs and each putative class member.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Live Nation Worldwide, Inc. intends to rely on any additional affirmative defenses which become available or apparent during discovery, and thus reserves the right to amend this Answer to assert such additional defenses.

WHEREFORE, Live Nation Worldwide, Inc. demands judgment:

(a) Dismissing the Complaint with prejudice;

(b) Awarding Live Nation Worldwide, Inc. the reasonable attorneys' fees and costs that it incurred in connection with this action; and

(c) Granting Live Nation Worldwide, Inc. such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Aaron Van Nostrand
Aaron Van Nostrand (AV 0072)
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900

Attorneys for Defendant
Live Nation Worldwide, Inc.

Dated: September 13, 2010