Andrew R. Wolf
*Member, NJ Bar*

THE WOLF LAW FIRM, LLC

Henry P. Wolfe
*Member, NJ, NY, MI Bars*

Elliot M. Gardner
*Member, NJ, NY Bars*

1520 U.S. Highway 130 • Suite 101
North Brunswick, New Jersey 08902

www.wolflawfirm.net
info@wolflawfirm.net

Tel. 732-545-7900 • Fax 732-545-1030

Charles N. Miller
*Of Counsel (ret.)*

August 8, 2011

**VIA FACSIMILE: (609) 989-0451   7 pages total**

Magistrate Judge Douglas E. Arpert
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

      Re:    Katz, et al. vs. Live Nation, Inc., *et al*.
                09-cv-03740-MLC-DEA

Dear Judge Arpert:

      This firm, along with Squitieri & Fearon, LLP, represents Plaintiffs on behalf of the putative class members in this matter. I am writing in opposition to the request by Live Nation ("LN"), set forth in its July 27, 2011 letter, to delay this case for another half-year so that it can marshal expert evidence prior to the class certification determination.

      At the outset, it should be noted that none of the issues identified for expert testimony are relevant to any element/issue of any of Plaintiffs' statutory or common law claims or to the upcoming class certification motion. Indeed, LN itself cannot even state the relevancy of the expert areas to any of Plaintiffs' claims. According to LN, its expert evidence will show that different ticket purchasers "react differently" to being charged a mandatory $6 per-ticket parking fee that allegedly was not really for parking but rather was a simple mark-up to pad profits, a $0.25 per-ticket charity fee that allegedly was not really paid to any charity, and a per-ticket "ticket fee" (of varying amounts) that was allegedly charged on top of the admission price in exchange for zero additional consideration. However, LN makes no effort to explain how ticket buyers' subjective "reactions" to being charged allegedly unlawful fees has any relevance to

Plaintiffs' claims under the New Jersey Consumer Fraud Act ("CFA") and Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA") or to class certification of those claims.

In fact, the CFA, at N.J.S.A. 56:8-2, explicitly excludes the consumer's subjective reaction as an element of a CFA claim, providing that an "unconscionable commercial practice" violates the CFA, "whether or not any person has in fact been misled, deceived or damaged thereby…"  See *Hughes v. Panasonic Consumer Electronics Co.* , 2011 WL 2976839 (D.N.J. July 21, 2011) (citing *Union Ink Co. v. AT & T Wireless*, 352 N.J.Super. 617, 801 A.2d 361 (N.J.Super.App.Div.2002)).   This is consistent with the general concept of unconscionability, which "is normally assessed by an objective standard" *Black's Law Dictionary*, 9th Ed.    Indeed, the CFA prohibition at issue (unconscionable commercial <u>practices</u>) is framed in terms of the <u>seller's</u> conduct and polices which was *uniform* with respect to all class members (i.e., there is no dispute that LN charged the mandatory per-ticket fees to all class members as part of a standardized ticket-selling procedure and that there was no opportunity for any of the class members to negotiate the fees).   See *In re Checking Account Overdraft Litigation*, --- F.R.D. ----, 2011 WL 3158998, *11 (S.D.Fla.,2011)("Plaintiffs' unconscionability claims focus on [defendant] and its conduct, making them appropriate for certification."), citing *Dienese v. McKenzie Check Advance of Wis., L.L.C.*, 2000 WL 34511333 (E.D.Wis. Dec. 11, 2000); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 669 (S.D.Cal.2010); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 343 (N.D.Cal.2010).

Although LN mentions three of the elements necessary for class certification under Rule 23—commonality, predominance, and superiority— the only element that LN actually addresses at all (and even then, in passing) is commonality. Specifically, LN argues that an expert is

required to establish that there is no "common consumer experience" for the proposed class members who were assessed allegedly unlawful fees:

> As a result [of the varying "reactions" of class members] there is not a common consumer experience for ticket purchasers to concerts at the Arts Center. This evidence is directly related to the commonality element under Fed. R. Civ. P. 23(a)(2),

July 27,2011 letter, p. 1. However, it is not enough for defendants to identify "dissimilarities" among the class representatives and the class members. LN's argument completely misconstrues Rule 23(a)(2), which simply requires that " there are questions of law or fact common to the class[.]" As noted in one of the cases cited by LN,

> **The commonality requirement of Rule 23(a) "is not a high bar,"** *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir.2004), **and is met if the plaintiff establishes that the " 'named plaintiff[ ] share[s] at least one question of fact or law with the grievances of the prospective class.' "** *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir.2001) (quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 310 (3d Cir.l998)). The facts or claims asserted by the various class members need not be identical. *Id.* Thus, satisfaction of this requirement is usually simple. *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 463 (E.D.Pa.2000)

*Marcus v. BMW of N. Am., LLC*, 2010 WL 4853308, *4 (D.N.J. Nov. 19, 2010)(emphasis added). As set forth in the Complaint, there is not just one issue of fact or law common to the Plaintiff and all putative class members, but many, including:

- o Whether Defendants have maintained a policy and/or practice of charging a per-ticket mandatory parking fee in ticket sales to Arts Center events;

- o Whether Defendants have maintained a policy and/or practice of charging a per-ticket mandatory "ticket fee" or "charity fee" in ticket sales to Arts Center events;

- o Whether Defendants' practice of charging a per-ticket, mandatory parking fee without regard to whether the purchaser parks a vehicle at the Arts Center is an deceptive and/or unconscionable commercial practice in violation of the Consumer Fraud Act (CFA) at N.J.S.A. 56:8-2;

- o Whether Defendants' practice of charging of a per-ticket, mandatory "ticket fee" without any indication as to the specific services or other consideration received by

> the consumer in exchange for the fee is a deceptive and/or unconscionable commercial practice in violation of the CFA at N.J.S.A. 56:8-2;
>
> o Whether Defendants' practice of charging a per-ticket, mandatory "charity fee" without remitting the fees to a charitable organization is a deceptive and/or unconscionable commercial practice in violation of the CFA at N.J.S.A. 56:8-2;
>
> o Whether Defendants' practice of charging a mandatory per-ticket "parking fee" for Arts Center event tickets purchased through Defendants' "No Service Fee Wednesday" promotional program is a misrepresentation, a deceptive commercial practice and/or unconscionable commercial practice in violation of the CFA at N.J.S.A. 56:8-2;
>
> o Whether Defendants' practice of charging a higher base admission price for Arts Center event tickets purchased through Defendants' "No Service Fee Wednesday" promotional program than on previous, ordinary "service fee" days is a misrepresentation, a deceptive commercial practice and/or unconscionable commercial practice in violation of the CFA at N.J.S.A. 56:8-2;
>
> o Whether Defendants' aforementioned fees and/or inflated prices constitute ascertainable loss to the consumers who paid them;
>
> o Whether Defendants' fees and pricing practices otherwise caused ascertainable loss to Arts Center event ticket purchasers;
>
> o Whether Defendants violated the Truth-in-Consumer Contract Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq.* (TCCWNA) by displaying the aforementioned unlawful fees and/or policies on Arts Center event tickets, on Defendants' internet website, on receipts and in emails sent to consumers.

Complaint, ¶59.  Thus, LN's proffered expert testimony will not aid the Court at all in ruling on the "commonality element under Fed. R. Civ. P. 23(a)(2)" as LN claims.

In support of its request to delay this case while it seeks expert testimony on class certification, LN quotes from *In re Hydrogen Peroxide*, 552 F.3d 305, 325 (3d Cir. 2009), "Rule 23 calls for consideration of all ***relevant*** evidence and arguments, including ***relevant*** expert testimony of the parties."  (emphasis added).   LN apparently reads this sentence to mean experts are *always* appropriate in class certification motions.   However, the Court in *Hydrogen Peroxide* was clear that the expert testimony must be **relevant** to class certification.   For

example, in *Hydrogen Peroxide,* which was an anti-trust case, the experts were economists whose opinions went directly to whether an element of the claim (anti-trust impact) could be proven on a class-wide basis. *Hydrogen Peroxide, supra*, at 312. Similarly, in the other cases cited by LN, many of the proffered expert testimony had to do with whether an element of the claim was susceptible to class-wide proof.[1] E.g., *In re Constar Intl. Inc. Secs. Litig.*, 585 F.3d 774, 786 (3d Cir. 2009)(securities case in which expert economist testified as to whether particular market was "efficient" enough in assimilating public information for misrepresentation in defendant-company's registration statement to be <u>material</u> to purchasing decisions of entire class of investors)[2]; *Bayshore Ford v. Truck Sales, Inc. v. Ford Motor Co.*, 2006 WL 3371690 (D.N.J. Nov. 17, 2006)(breach of franchise agreement case in which expert economist opinion related to possibility of determining damages on a class-wide basis through "regression analysis".) In *Marcus v. BMW of N. Am., LLC*, 2010 WL 4853308 (D.N.J. Nov. 19, 2010), it isn't even clear if the motion to exclude expert testimony was relevant to class certification at all – especially in light of the fact that the same order grants the certification of a New Jersey sub-class under the N.J. CFA, noting that the concern was whether the misrepresentations were uniform across the class, not how class members felt about being defrauded. *Id*. at *14

By contrast, LN's proffered expert opinion does not relate to any element or aspect of class certification or class-wide proof of any elements of Plaintiffs' claims. In fact, it appears that LN's proffered evidence is not aimed specifically at class certification (i.e. whether the

---

[1] In one case cited by LN, *Marcus v. BMW of N. Am., LLC*, 2010 WL 4853308, *17 (D.N.J. Nov. 19, 2010), the court's approval of defendant's expert clearly contemplated that the opinion was to be used at trial and not for class certification. The court stated that the expert's opinion could potentially aid "jurors" at "trial" (*Id.* at *17) and made no reference at all to the expert's opinion in the portion of the decision granting the plaintiffs' class certification motion. *Id.* at *1-15.
[2] Defendant fails to mention that the 3rd Circuit strongly questioned the relevancy of the defendant's expert opinion in *Constar* because it incorrectly assumed that individual class members' reliance was a necessary element of the §11 claim at issue. *Constar* at 786.

5

elements of an unconscionable commercial practices claim can be proven *or disproven* on a class-wide basis) but instead goes directly to the merits of Plaintiffs' claims.  LN apparently intends to introduce consumer surveys to attempt to argue that its fee policies do not violate ""[t]he standard of conduct contemplat[ing] * * * good faith, honesty in fact and observance of fair dealing" necessary to establish a claim of unconscionable commercial practices under the CFA.  It would be patently unfair to permit LN to challenge class certification with cherry-picked merits evidence after steadfastly refusing to produce any merits discovery until after class certification.  Perhaps defendants can one day conjure an expert area of testimony that may be relevant to the merits of the claims but at this stage of the proceedings there is no basis to delay the case an additional half-year ( through late January 2012) to allow defendants to come up with a way to defeat class certification now that depositions of the plaintiff class representatives has demonstrated to defendants that both plaintiffs are adequate class representatives who intend to press claims which can be established through common proof.

     If the Court were to allow LN to go forward with expert evidence on the general public's "reaction" to the fees, it should also require LN to produce all heretofore withheld discovery that it has refused to produce (e.g., discovery on the truth of its public statements that its parking policy at the PNC Bank Arts Center is based on scientific studies; discovery on LN's marketing and internet strategy and description of promotions and website setup; discovery on exactly what LN has done with all the charity fees it has collected; discovery on whether consumers really receive any consideration in exchange for the fees, etc.).

     In short, LN has not been able to articulate any basis or justification for delaying this case for a half-year to accommodate its preparation of an expert report for which it can articulate no relevance to the Court's class certification determination.  Plaintiffs respectfully request that

6

LN's request be denied and that the briefing schedule for class certification be set according to the ordinary time limits imposed by the court rules.

                          Respectfully submitted,

                          s/_Henry P. Wolfe_____
                          Henry P. Wolfe

cc:     Philip R. Sellinger, Esq., Greenberg Traurig, LLP - Via Email
         Lee Squitieri, Esq., Squitieri & Fearon, LLP - Via Email